May 19, 2020

**Supreme Court**
(concurrence
begins on page 12)

No. 2018-326-Appeal.
(PM 17-3514)

Providence Teachers' Union Local 958,      :
    AFT, AFL-CIO et al.

          v.                    :

Nicholas Hemond et al.                      :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Providence Teachers' Union Local 958,   :
    AFT, AFL-CIO et al.

          v.           :

Nicholas Hemond et al.       :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## OPINION

**Justice Flaherty, for the Court.** The plaintiffs, Providence Teachers' Union Local 958,

AFT, AFL-CIO, and Jennifer Leyden (collectively the Union), appeal from an order of the

Superior Court denying their motion[1] to vacate an arbitration award and granting a motion of the

defendants, Nicholas Hemond and the City of Providence (collectively the City), to confirm the

same award.[2] On appeal, the Union argues that the trial justice erred in holding that the decision

of the Employees' Retirement System of Rhode Island (the Retirement Board) granting Leyden's

application for an ordinary disability retirement retired Leyden as a matter of law. This case came

---

[1] The parties filed "petitions" in the Superior Court. For the sake of clarity, we characterize the filings as "motions." *See* G.L. 1956 § 28-9-15.

[2] The named defendants in the case are the City of Providence; James Lombardi, III, in his capacity as the City of Providence Treasurer; Christopher N. Maher, in his capacity as Superintendent of Schools for the City of Providence; the Providence School Board; Nicholas Hemond, in his capacity as President of the Providence School Board; and Diagneris Garcia, Bobby Gondola, Jr., Muyideen Ibiyemi, Lorraine Lalli, Nina Pande, Mark Santow, Jr., Neville Songwe, and Kinzel Thomas, in their capacity as members of the Providence School Board.

- 1 -

before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel, and after thoroughly examining the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we vacate the order of the Superior Court, and we remand the case to that tribunal for entry of an order vacating the arbitration award.

## I

## Facts and Travel[3]

During her nineteen-year tenure as a Providence school teacher, Leyden was assaulted by students on three separate occasions. After each incident, Leyden sought psychiatric treatment, and each time she was diagnosed with post-traumatic stress disorder. Finally, after the third assault, Leyden became totally disabled, suffering symptoms that "included terror about returning to the classroom, difficulty sleeping, flashbacks, and panic attacks." For the first year that she was absent from her employment, Leyden received her full salary as provided for in the collective bargaining agreement between the City and the Union. After that benefit expired, Leyden applied for, was awarded, and received workers' compensation benefits.

On September 30, 2009, Leyden timely applied to the Retirement Board for both an accidental disability retirement and an ordinary disability retirement. In those applications, Leyden claimed that she was disabled due to a workplace injury. Three independent medical examinations confirmed that Leyden was in fact totally disabled and that she would never be able to return to work as a teacher. However, the Retirement Board denied Leyden's application for an

---

[3] We have gleaned the facts from the arbitrator's decision.

accidental disability retirement.[4] After Leyden appealed that decision to the Superior Court, a trial justice vacated the Retirement Board's denial and remanded the case to the Retirement Board for reconsideration of Leyden's application.

After a two-year delay in her case, allegedly caused by a backlog of applications to the Retirement Board, and almost six years after Leyden became disabled, the Retirement Board again denied Leyden's application for an accidental disability retirement. However, this time the Retirement Board voted to approve Leyden's alternative application for an ordinary disability retirement.

The Retirement Board notified Leyden of its decision and advised her that she would be required to fill out and execute several forms before it could process her disability pension benefits. Also, and significant to our analysis of this appeal, the Retirement Board's letter advised Leyden that, if she had not done so already, she would be required to terminate her employment with the City before she could receive her pension. Leyden did not submit a resignation letter or formally request to retire, nor did she fill out any of the other required forms.

While she was continuing to receive workers' compensation benefits, Leyden began to see a new doctor. Leyden maintained that, under the new physician's care, she was improving and that she wanted to return to work. In July 2015, Leyden submitted a note from her primary care physician to the Providence School Department in which that doctor opined that Leyden could return to work with no restrictions. According to Leyden, she then spoke to someone at the School Department's Human Resources Office, who told her that there would be "no problem" and that

---

[4] From our review of the record, the Retirement Board appeared to take no action on Leyden's application for an ordinary disability retirement.

- 3 -

the necessary paperwork would be completed so that she could get a teaching assignment for the upcoming school year.

However, when Leyden later went to the School Department, another employee informed her that that School Department considered her to be retired. Still another School Department employee told Leyden that the computer records indicated that she was not retired but that she was receiving workers' compensation. That employee informed Leyden that, if she wished to retire, she would need to send a letter stating her intent to retire and the effective date of her retirement. A frustrated Leyden then contacted the Union for assistance. The Union filed a grievance, in which it alleged that the School Department had violated the collective bargaining agreement when it denied Leyden's reinstatement to her former teaching position.

In response to the grievance, the School Department informed Leyden that, because of conflicting information about whether she was permanently disabled or not, it was scheduling an independent medical examination. Leyden reported for the examination and, according to Leyden, the examining physician informed her that she was fit to return to work. Subsequent to the examination, however, and in a confusing turn of events, the office of that independent medical examiner informed Leyden that the School Department had "canceled" the examination and therefore the doctor had shredded his report. In January 2016, the parties submitted the grievance to arbitration, pursuant to the collective bargaining agreement. An arbitrator was selected, and a hearing took place on August 23 of that year.

On February 16, 2017, the arbitrator, in a written decision, ruled in favor of the School Department. He held that, because Leyden had been retired, the grievance was not substantively arbitrable because, as a retiree, she was no longer a member of the bargaining unit and, thus, the Union had no standing to represent her. In so doing, the arbitrator accepted the City's argument

- 4 -

that the Retirement Board had retired Leyden as a matter of law when it granted her request for an ordinary disability pension.

The Union filed a motion in the Superior Court to vacate the arbitrator's award under the terms of G.L. 1956 chapter 9 of title 28. In response, the City filed an objection and moved to confirm the arbitrator's award. The trial justice agreed with the arbitrator that the grievance was not substantively arbitrable.[5] She therefore granted the City's motion to confirm the award, and she denied the Union's motion to vacate the award. The Union timely appealed.

## II

## Standard of Review

"It is well settled that, in the typical case, the judiciary's role in the arbitration process is limited." *Providence School Board v. Providence Teachers Union, Local 958, AFT, AFL-CIO*, 68 A.3d 505, 508 (R.I. 2013) (quoting *Drago Custom Interiors, LLC v. Carlisle Building Systems, Inc.*, 57 A.3d 668, 670 (R.I. 2012)). "When, as here, an arbitration provision is contained 'in a written contract between an employer and an association of employees, a labor union, trade union, or craft union, the provisions of chapter 9 of title 28' govern judicial review." *Id.* (deletions and brackets omitted) (quoting § 28-9-1). "Specifically, upon timely application for an order confirming an arbitration award, 'the court must grant the order unless the award is vacated, modified, or corrected as prescribed in §§ 28-9-18 and 28-9-19, or unless the award is unenforceable under the provisions of § 28-9-13.'" *Id.* (quoting § 28-9-17). Normally, the

---

[5] Although the trial justice primarily based her ruling on her view that the arbitrator's interpretation of the relevant statutes "did not constitute a manifest disregard of the law[,]" she also said that, based on her "own independent analysis[,]" she agreed with the arbitrator's position. As we will explain *infra*, arbitrators are not entitled to any deference either by this Court or the Superior Court with respect to the issue of substantive arbitrability. *See Providence School Board v. Providence Teachers Union, Local 958, AFT, AFL-CIO*, 68 A.3d 505, 508 (R.I. 2013).

conditions for vacating an arbitrator's award are extremely narrow. *See ABC Building Corporation v. Ropolo Family, LLC*, 179 A.3d 701, 705-06 (R.I. 2018) (stating that a similar arbitration statute, G.L. 1956 § 10-3-12, provides narrow conditions when an arbitration award shall be vacated).

"However, 'the issue of whether a dispute is arbitrable is a question of law that this Court reviews *de novo.*'" *Providence School Board*, 68 A.3d at 508 (brackets omitted) (quoting *State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 866 A.2d 1241, 1247 (R.I. 2005)). Additionally, "questions about the meaning of statutes are reviewed *de novo* by this Court." *Olamuyiwa v. Zebra Atlantek, Inc.*, 45 A.3d 527, 533 (R.I. 2012) (quoting *Planned Environments Management Corp. v. Robert*, 966 A.2d 117, 121 (R.I. 2009)). Thus, we review the issue before this Court on appeal *de novo*.

## III

### Discussion

The issue that we must confront is whether or not the Retirement Board is cloaked with the authority to unilaterally retire a teacher pursuant to G.L. 1956 § 16-16-14. In the City's view, the language "may retire" in § 16-16-14 provides the Retirement Board with this authority. In the Union's view, nothing in either chapter 8 of title 36 of the general laws, governing the administration of the retirement system, or § 16-16-14 grants this authority to the Retirement Board. We agree with the Union.

Pursuant to chapter 16 of title 16, related to teachers' retirement, a teacher who seeks to retire may travel one of three paths. First, a teacher can apply for a service retirement based on the teacher's age and length of service. Section 16-16-12. Second, a teacher who is permanently disabled as a result of an injury that was sustained in the performance of duty may apply for an accidental disability retirement. Section 16-16-16. Finally, and relevant to this case, a teacher

whom the Retirement Board has found to be permanently disabled, but not as a result of an injury that was suffered in the performance of duty, may apply for an ordinary disability retirement. Section 16-16-14. Each type of pension provides for a different amount of benefit.

Under the ordinary disability framework, "a teacher, his or her department head, or a person acting on the teacher's behalf" may apply to the Retirement Board for an ordinary disability retirement in the event that "the teacher is physically or mentally incapacitated for the performance of duty[.]" Section 16-16-14(a). If "medical examination[s] show that the teacher is physically or mentally incapacitated for the performance of duty and ought to be retired, * * * the retirement board[] *may retire* the teacher for ordinary disability." *Id.* (emphasis added). The record in this case reveals that, after the Retirement Board granted an ordinary disability retirement, Leyden was required to complete various tasks, including forms that had to be executed. She was also informed that she must terminate her employment before she could receive her retirement allowance.[6]

The City homes in on the language "may retire" in § 16-16-14 and argues that that language bestows the authority on the Retirement Board to unilaterally retire a teacher by approving her application for an ordinary disability retirement. However, in our opinion, something more is required to retire a teacher pursuant to § 16-16-14.

The General Assembly, by enacting §§ 36-8-2 and 36-8-3, established the Retirement Board "for the purpose of providing retirement allowances for employees of the state of Rhode

---

[6] Although the arbitrator's decision described the forms that Leyden was required to fill out, from our review of the record those documents were not introduced into evidence at the arbitration hearing. However, because neither party disputes the arbitrator's description of those documents, and because our decision does not turn on their specific content, we therefore rely on the arbitrator's decision.

Island[.]" Section 36-8-1(16) defines "retirement allowance" as "annual payments for life made after retirement under and in accordance with chapters 8 to 10 of this title."[7]

We do not read the language of § 36-8-2 as granting the Retirement Board with the authority to retire teachers. Instead, we read § 36-8-2 as granting to the Retirement Board the authority to, among other things, determine a covered employee's eligibility for retirement and to pay a pension to the eligible member of the system after she has terminated her employment and retired. Nothing in the language of chapter 8 of title 36 or chapter 16 of title 16 suggests that the Retirement Board is vested with the authority to sever the employment relationship between an employer and employee and thus, on its own, to retire a teacher. If the Retirement Board had such authority, the Retirement Board would become inextricably intertwined in a variety of personnel issues that arise between employees and their employers. Nothing in these statutes indicates that the General Assembly intended for the Retirement Board to take on this authority or responsibility and enter the realm of adjudicating employment or contract issues between teachers and school departments.

Our opinion is supported by the actions taken by the Retirement Board when it acted on Leyden's application. According to the arbitration award, when the Retirement Board granted an ordinary disability retirement to Leyden, it sent a letter to Leyden stating that she would need to terminate her employment before she could begin to receive her ordinary disability allowance. That language is a clear indication that the Retirement Board does not consider itself to have the authority to unilaterally retire a teacher. Indeed, the Retirement Board requires affirmative action by the employee after it has awarded a pension.

---

[7] Those retirement allowances are commonly referred to as "pensions."

Additionally, the definition of the word "retirement" supports our interpretation. *See Olamuyiwa*, 45 A.3d at 535 ("It is well established that 'when a statute does not define a word, courts will often apply a common meaning as provided by a recognized dictionary.'" (deletion and brackets omitted) (quoting *Robert*, 966 A.2d at 123)). Black's Law Dictionary defines "retirement" as the "[t]ermination of one's own employment or career, esp. upon reaching a certain age or for health reasons[.]" Black's Law Dictionary 1574 (11th ed. 2019). This definition makes it clear that voluntary retirement entails an employee making the decision to terminate her own employment and that that decision is not ceded to anyone else.[8]

Finally, the City's argument fails to take into consideration the context of § 16-16-14 with regard to chapter 8 of title 36. *See Sorenson v. Colibri Corp.*, 650 A.2d 125, 128 (R.I. 1994) ("[W]e consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections."). The City's argument is based solely on a few words located in § 16-16-14. However, part of the entire retirement system statutory framework is chapter 8 of title 36, which pertains to the authority, governing structure, and responsibilities of the Retirement Board. The City's laser focus on two words, "may retire," a single phrase in § 16-16-14 fails to consider the entire statutory structure pertaining to the retirement system.

The City also argues that, if the Retirement Board does not have the authority to retire a teacher, a teacher could, possibly in bad faith, evade retirement by merely refusing to either resign or to complete some other administrative paperwork. Such a scenario, the City warns, would result in a teacher indefinitely avoiding retirement. Further, the City argues that a holding by this Court

---

[8] Although Black's Law Dictionary also refers to involuntary retirement, that issue is not presently before us, as we will explain later in this opinion.

that the Retirement Board cannot effectuate a retirement on its own would completely undermine the power to involuntarily retire a medically unfit teacher.[9] We do not agree.

We have said that "if a mechanical application of a statutory definition produces an absurd result or defeats legislative intent, this Court will look beyond mere semantics and give effect to the purpose of the act." *O'Connell v. Walmsley*, 156 A.3d 422, 428 (R.I. 2017) (brackets omitted) (quoting *Commercial Union Insurance Co. v. Pelchat*, 727 A.2d 676, 681 (R.I. 1999)). Nothing in chapter 8 of title 36 or chapter 16 of title 16 points to a legislative intent that the Retirement Board has the authority to retire employees on its own or terminate the employment of members of the retirement system. Rather, it is clear that the Retirement Board is imbued with the authority to determine eligibility, manage the financing of the retirement system, and compensate eligible members of the retirement system with their appropriate retirement benefit. *See* § 32-8-2.

Turning to the specifics of this case, we conclude that it is determinative that Leyden took no affirmative steps that would indicate that she had made a decision to terminate her employment with the School Department and retire. Because she neither resigned nor retired, she remained an employee who was out of work and thus she remained a member of the collective bargaining unit. As a result, her grievance that she was denied an appointment for the upcoming academic year was substantively arbitrable. *Cf. Providence School Board*, 68 A.3d at 509 (holding that a union does not have standing to represent retired employees because retirees are not part of the bargaining unit). Therefore, we are led to the inescapable conclusion that we must vacate the trial justice's

---

[9] As to the second part of the City's argument, we note that this case is not about the retirement of a clearly disabled or medically unfit teacher, and thus that issue is not before us. *See H.V. Collins Company v. Williams*, 990 A.2d 845, 847 (R.I. 2010) ("[W]e shall not address moot, abstract, academic, or hypothetical questions." (quoting *Morris v. D'Amario*, 416 A.2d 137, 139 (R.I. 1980))).

- 10 -

order granting the City's motion to confirm the arbitrator's award and denying the Union's motion to vacate the arbitrator's award.

## IV

## Conclusion

For the reasons set forth in this opinion, we vacate the order of the Superior Court and remand this case to the Superior Court with instructions to enter an order vacating the arbitrator's award.

**Justice Robinson, concurring.** I wholeheartedly agree with the majority's conclusion that Jennifer Leyden remained an employee of the City of Providence despite the fact that the Employees' Retirement System of Rhode Island (Retirement Board) approved her application for an ordinary disability pension. However, with sincere respect for my colleagues in the majority, I depart from the majority opinion concerning its characterization of the issue before the Court in this case.

The majority writes that the issue is "whether or not the Retirement Board is cloaked with the authority to unilaterally retire a teacher pursuant to G.L. 1956 § 16-16-14." While I acknowledge that the parties also largely frame the issue in this way, in my view, we need not attempt to pinpoint which person or entity "retires" a teacher seeking an ordinary disability pension. In reality, retirement is a multi-step process that requires the collaboration of the Retirement Board, the employee, and the employer. The steps that each party is required to perform in order for the employee to achieve the status of "retired" vary based upon the specific type of benefit the teacher is seeking. *See* § 16-16-12 (setting forth the requirements for a service retirement); § 16-16-14 (setting forth the requirements for an ordinary disability retirement); and § 16-16-16 (setting forth the requirements for an accidental disability retirement). Therefore, I believe that it would be far wiser to focus our analysis on the narrower question of *when* a teacher is officially retired, as opposed to *who* has authority to effectuate said retirement. Accordingly, in my opinion, the issue in this case is more appropriately framed as whether a teacher who applies for an ordinary disability pension under § 16-16-14 is considered "retired" at the point in time that the Retirement Board approves his or her application or at a later point in the extended administrative process.

- 12 -

Needless to say, I agree with the majority that issues of statutory interpretation are reviewed *de novo*. *See Planned Environments Management Corp. v. Robert*, 966 A.2d 117, 121 (R.I. 2009). As the majority discusses, § 16-16-14(b) provides that, after a teacher or someone acting on behalf of the teacher submits an application for an ordinary disability pension with supporting medical documentation, and then three physicians engaged by the Retirement Board determine that "the teacher is physically or mentally incapacitated for the performance of duty and ought to be retired, * * * the [Retirement Board] may retire the teacher for ordinary disability." Regardless of who is ultimately responsible for triggering the finalization of the retirement process under § 16-16-14, the question remains as to when that retirement becomes effective. Thus, it is my view that the relevant statute is ambiguous as to this particular question.

When a statute is ambiguous, "it is incumbent upon us to apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." *Powers v. Warwick Public Schools*, 204 A.3d 1078, 1086 (R.I. 2019) (internal quotation marks omitted). Additionally, "[i]n effectuating the Legislature's intent, we review and consider the statutory meaning most consistent with the statute's policies or obvious purposes." *Bailey v. American Stores, Inc./Star Market*, 610 A.2d 117, 119 (R.I. 1992).

It is undisputed that the Retirement Board is responsible for the administration of the retirement system for public officers and employees, which responsibility includes determining a covered teacher's eligibility to receive an ordinary disability pension and providing for payment to those deemed eligible. *See* G.L. 1956 §§ 36-8-2, 36-8-3, and 16-16-14(c). Pursuant to this authority, the Retirement Board promulgated certain rules and regulations entitled the Employees' Retirement System of Rhode Island and Municipal Employees' Retirement System Regulations (Retirement Board Regulations). 120 RICR 00-00-1. Rule 1.8 of the Retirement Board

Regulations sets forth the rules governing a retired member's right to revoke or modify his or her retirement option. Section B of Rule 1.8 defines a "Retired Member" as follows:

> "A member of the Employees Retirement System of Rhode Island or the Municipal Employees Retirement System whose application for retirement benefits has been approved by the Retirement Board."

Thus, according to the Retirement Board Regulations, Ms. Leyden was deemed to be "retired" at the point when the Retirement Board approved her application for an ordinary disability pension. However, it is my opinion that the Retirement Board's definition of "Retired Member" is incorrect.

Although this Court accords a degree of "deference to an agency's interpretation of an ambiguous statute that it has been charged with administering and enforcing," such deference is provided only in instances when "the agency's construction is neither clearly erroneous nor unauthorized." *Town of Burrillville v. Pascoag Apartment Associates, LLC*, 950 A.2d 435, 445 (R.I. 2008) (internal quotation marks omitted). Moreover, this Court has previously emphasized "that an agency's interpretation is 'not controlling' and, further, that 'regardless of * * * deference due, this Court always has the final say in construing a statute.'" *Mancini v. City of Providence*, 155 A.3d 159, 168 (R.I. 2017) (quoting *In re Proposed Town of New Shoreham Project*, 25 A.3d 482, 506 (R.I. 2011)). This principle is especially true when we are "considering a pure question of law, which does not require special expertise beyond what the members of this Court possess." *Id.*

If the Retirement Board's definition were correct, it would follow that, at the moment when the Retirement Board approves a member's application, that member would become simultaneously retired and employed. It is my view that such a result would violate the canon of statutory construction relative to absurdity as these two concepts cannot be logically reconciled. *See, e.g., National Refrigeration, Inc. v. Capital Properties, Inc.*, 88 A.3d 1150, 1156 (R.I. 2014)

- 14 -

("[U]nder no circumstances will this Court construe a statute to reach an absurd result.") (internal quotation marks omitted). Moreover, in Ms. Leyden's case, after her application was approved, the Retirement Board sent her a letter informing her that, in addition to completing several forms, she was also required to terminate her employment with the City of Providence before the Retirement Board could process her benefits. This requirement is inconsistent with the Retirement Board's own regulatory definition of a "Retired Member." Therefore, it is my definite opinion that a teacher, such as Ms. Leyden, is not retired pursuant to § 16-16-14 until, at a minimum, such time as the Retirement Board approves his or her application for an ordinary disability pension *and* his or her employment is terminated.

As Ms. Leyden took no further action after the Retirement Board approved her application, I agree with the majority's conclusion that she was not retired and, thus, remained an employee of the City of Providence. Accordingly, it is also my opinion that the dispute is arbitrable.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Providence Teachers' Union Local 958, AFT, AFL-CIO et al. v. Nicholas Hemond et al. |
| **Case Number** | No. 2018-326-Appeal. (PM 17-3514) |
| **Date Opinion Filed** | May 19, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For the Plaintiffs: <br><br> John J. Desimone, Esq. |
| | For the Defendants: <br><br> Charles A. Ruggerio, Esq. |